# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PAUL JANCZAK,                                    )
                                                 )
                   Plaintiff,                    )
                                                 )
v.                                               )        Case No. 13-CV-0154-CVE-FHM
                                                 )
TULSA WINCH, INC.                                )
                                                 )
                                                 )
                   Defendant.                    )

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment Regarding Plaintiff's Damages and Brief in Support (Dkt. # 160).  Defendant argues that it is entitled to summary judgment because it is undisputed that defendant paid plaintiff all damages that he may recover under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., by paying plaintiff through the end of corporate restructuring, pursuant to which defendant eliminated plaintiff's position. Id. at 2.  Plaintiff responds that numerous factual issues exist regarding the damages to which he is entitled, including defendant's motivations for restructuring and plaintiff's ability to transfer to another position, and asks the Court to deny defendant's motion.  Dkt. # 172.

## I.

On June 21, 2010, defendant, a subsidiary of Dover Corporation, hired plaintiff to serve as its general manager (GM) for the company's British Columbia operation. Dkt. # 61, at 8; Dkt. # 88, at 5.  As GM, plaintiff was directly responsible for all functions of two Canadian business units and oversaw the integration these units. Id.  In May 2012, plaintiff's direct supervisor was fired for an inappropriate management style, after which defendant's president, Steve Oden, stated that plaintiff

would lead the Canadian operations in his supervisor's absence and would have an opportunity to display his leadership skills.  Dkt. # 65, at 5-6; Dkt. # 85, at 5.  Plaintiff thereafter reported directly to Oden.  Dkt. # 61, at 8; Dkt. # 88, at 6.  Oden stated that subsequent performance reviews found plaintiff to have been meeting expectations.  Dkt. # 61-2, at 2-3.

At some point, the exact date being in dispute, defendant began assessing the management structure of this Canadian operation and the necessity of a GM position in a matrix reporting structure.  After Oden visited the company's Canadian operations in June 2012, he explained  that he observed that, after the departure of plaintiff's original supervisor, the business structure in Canada was evolving toward a matrix reporting structure, with most department heads reporting directly to corporate headquarters in Jenks, Oklahoma.  Dkt. # 61-2, at 2; see also Dkt. # 65, at 6. Oden further explained that during a June 26, 2012 meeting, someone raised the question of whether a GM was necessary in the Canadian operations and that, on July 6, 2012, Jillian Evanko Harris, a vice president with the company, recommended that the company eliminate plaintiff's position.  Dkt. # 61-2, at 2.

On July 30, 2012, plaintiff was injured in a motorcycle accident and defendant granted plaintiff leave under the FMLA beginning on July 31, 2012.  Dkt. #61, at 11; Dkt. # 88, at 7.  On August 7, 2012, Oden sent an email to his supervisor at Dover, Bill Spurgeon, in which he explained that he would be evaluating plaintiff's performance as GM as well as the need for a GM in general and noted that he was generally not in favor of "a highly matrixed and remote management structure." Dkt. # 93-9, at 1.  At the time Oden sent the email, he had not yet decided to eliminate the GM position and was still giving plaintiff the opportunity to demonstrate his capabilities.  Dkt. # 93-22, at 7-8.  Oden attested that he decided to eliminate the GM position and terminate plaintiff

on or about August 14, 2012.  Dkt. # 61-2, at 3.  On August 31, 2012, Oden emailed Spurgeon and informed him that another individual would be taking over as site manager for the Canadian facility and that the GM position would be eliminated and plaintiff terminated.  Dkt. # 93-19.  In the email, Oden also stated that plaintiff would be unable to travel for another three weeks, but that he would be notified of the termination decision when he returned to work.  Id.

On October 1, 2012, plaintiff returned to work.  Dkt. # 61, at 13; Dkt. # 88, at 7.  On that day, Oden and Cheryl Bailey, the director of human resources, notified plaintiff that defendant had decided to eliminate plaintiff's GM position and terminate his employment.  Dkt. # 61, at 13; Dkt. # 88, at 7.  Oden informed plaintiff that his termination was not based on his performance, as plaintiff was known to have a positive attitude in the workplace and had never been disciplined during his employment.  Dkt. # 65, at 8; Dkt. # 85, at 8.  Plaintiff asked Oden about the possibility of transferring to another position within the company, but defendant did not consider plaintiff for another position, despite the fact that plaintiff was eligible for rehire.  Dkt. # 65, at 8-9; Dkt. # 88, at 8-9.  At the end of November, defendant paid plaintiff three months salary in lieu of notice of termination, consistent with the offer letter for his position.  Dkt. # 61, at 16; Dkt. # 88, at 11.  No one replaced plaintiff as GM, and plaintiff's duties were absorbed by the matrixed organization.  Dkt. # 61-2, at 4.  Subsequent to plaintiff's termination, defendant also terminated Garry Jung, the Canadian controller.  Dkt. # 61-6, at 5.  Defendant's stated reason for terminating Jung was that it was terminating the position because the new matrix reporting structure rendered the Canadian controller position duplicative and unnecessary.  Id.; Dkt. # 61-2, at 4.

Plaintiff filed this action in 2013, alleging interference with the exercise of his rights under the FMLA, and retaliation for engaging in protected activity under the FMLA.  Dkt. # 1.  Plaintiff

asserted that defendant interfered with his rights and retaliated against him for taking FMLA leave by terminating plaintiff's employment, refusing to pay post-termination compensation, refusing to reinstate plaintiff to his position or a substantially equivalent position, and refusing to allow plaintiff to transfer to another position. Id. at 6-8. This Court granted summary judgment in favor of defendant, finding that defendant had shown, as a matter of law, that it would have discharged plaintiff pursuant to a restructuring plan regardless of plaintiff's exercise of his FMLA rights. Dkt. # 121. On appeal, the Tenth Circuit Court of Appeals affirmed the Court's grant of summary judgment on the retaliation claim, but reversed the ruling on the interference claim and remanded for further consideration. Dkt. # 135. The Tenth Circuit concluded that summary judgment on the interference claim was premature when the evidence defendant presented to show it would have terminated plaintiff's position regardless of his FMLA leave showed only that defendant was contemplating eliminating the position and did not conclusively show that plaintiff's termination would certainly have occurred. Id. at 7. On remand, this Court denied defendant's motion to dismiss plaintiff's remaining claim, but granted defendant leave to file a motion for summary judgment related to the issue of damages only. Dkt. # 157, at 4. Defendant now argues in its motion that it has paid plaintiff all damages to which he may be entitled and seeks summary judgment in its favor. Dkt. # 160, at 2. Plaintiff responds that disputed factual issues exist regarding the damages to which plaintiff is entitled and asks the Court to deny defendant's motion. Dkt. # 172.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); <u>Kendall v. Watkins</u>, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" <u>Id.</u> at 327 (quoting FED. R. CIV. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that it is entitled to summary judgment because it has paid plaintiff all damages to which he is entitled.  Dkt. # 160, at 1-2.  Defendant asserts that there is no genuine

factual dispute that a restructuring occurred and that plaintiff's position would have been terminated, regardless of his FMLA leave, by December 31, 2012.[1]  Id. at 11.  Defendant further asserts that plaintiff was not entitled to reinstatement because his position no longer existed and that there is no evidence in the record suggesting that plaintiff would be entitled to transfer to another position as there were no open positions at the time plaintiff was terminated, defendant has no transfer policy, and plaintiff was not identified as a high potential talent within the company.  Id. at 11-12.  As such, defendant argues that plaintiff is entitled to damages only through the restructuring period, a  period through which defendant has already paid plaintiff.  Id. at 12.  Plaintiff argues that numerous factual disputes exist, including defendant's motivation for terminating plaintiff and eliminating his position and whether plaintiff was entitled to a transfer to an equivalent position upon his return from his FMLA leave.  Dkt. # 172, at 21.

Under the FMLA, when an employer interferes with an employee's exercise of his FMLA rights, the employee is entitled to the following damages:

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee.

29 U.S.C. § 2617(a)(1)(A)(I).  These damages may take the form of back pay, which is intended to compensate a plaintiff for lost wages and benefits before trial, and front pay, an equitable remedy designed to compensate a plaintiff for losses after trial.  See Smith v. Diffee Ford-Lincoln-Mercury, Inc.,

---

[1]     To the extent that defendant argues that the Tenth Circuit conclusively determined that a restructuring occurred, this has no bearing on the motivation for such a restructuring.  And, as this Court explained in a previous opinion and order, nothing in the Tenth Circuit opinion precludes this Court from reconsidering factual issues on remand.  See Dkt. # 157, at 3.

298 F.3d 955, 964 (10th Cir. 2002).  Defendant asserts that it has paid defendant back pay for the entire period to which he is entitled and that plaintiff has no claim for front pay.  Dkt. # 160, at 11. Plaintiff asserts that he is entitled to additional back pay based on defendants's decision to eliminate plaintiff's position and front pay in lieu of reinstatement or transfer.  Dkt. # 172, at 19, 22.

Defendant first argues that it is undisputed that it underwent a restructuring and that plaintiff would have been terminated regardless of his FMLA leave by the end of 2012.  Dkt. # 160, at 11. Defendant asserts that, because plaintiff's position was terminated for non-discriminatory reasons, plaintiff is not entitled to back pay for any period of time after the elimination of his position.  Id. at 10-11.  And because defendant paid plaintiff through the end of 2012, defendant asserts plaintiff is entitled to no further damages.  Id.; see also Martinez v. El Paso Cnty., 710 F.3d 1102, 1106 (5th Cir. 1983) (discussing inability to recover back pay beyond period in which employer terminated position).  Plaintiff argues that the Tenth Circuit reversed this Court's grant of summary judgment in favor of defendant on the interference claim precisely because a disputed factual issue existed regarding plaintiff's motives in terminating plaintiff and eliminating his position.  Dkt. # 172, at 14.

The Tenth Circuit, in reversing this Court's grant of summary judgment on the interference claim, explained that "a reasonable jury could conclude that [plaintiff's] taking FMLA leave played a role in his ultimate termination and so find in his favor."  Dkt. # 135, at 11.  Numerous factual issues exist regarding defendant's motivations in terminating plaintiff's employment, including precisely when defendant began to review the Canadian business structure, when it decided to eliminate plaintiff's position, and whether the decision to eliminate plaintiff's position was based upon his FMLA leave.  See id.  ("Though taking advantage of [plaintiff's] absence to reevaluate the value of his contributions to the company might appear a prudent economic decision in the abstract,

7

protecting ill or caregiving employees from the effects of such a decision is precisely the purpose of the FMLA."). Although the company underwent a restructuring period that resulted in the elimination of plaintiff's position, it is not undisputed that the elimination of the position was solely motivated by organizational motives and was not, at least in part, based on plaintiff's FMLA leave. See id. (A reasonable juror might . . . infer that the decision to eliminate [plaintiff's] position was related to his medical condition and his exercise of FMLA leave."). The Tenth Circuit explained that such a factual dispute precluded summary judgment:

> We agree that [defendant] provided evidence suggesting that it was contemplating eliminating the GM position before [plaintiff] was placed on leave. But such evidence does not constitute sufficient proof to permit summary judgment. Our precedent requires an employer seeking summary judgment on an interference claim to show that termination would certainly have occurred regardless of leave.

Id. at 7. Because it is disputed that plaintiff would have been terminated and his position eliminated regardless of his FMLA leave, the Court cannot conclude that plaintiff would be entitled to no additional back pay based on a non-discriminatory elimination of his position.

Defendant next argues that it is undisputed that plaintiff could not be reinstated to his position because it had been eliminated and that plaintiff would not have been entitled to a transfer when there company had no open positions, it did not have a transfer policy, and it did not consider plaintiff a high potential talent. Dkt. # 160, at 11-12 . Because plaintiff could not have taken another position, defendant argues, plaintiff is entitled to no more damages than those he has already collected. Id. Plaintiff asserts that it is disputed whether plaintiff was entitled to a transfer, specifically alleging that other employees transferred between defendant and other Dover-related entities. Dkt. # 172, at 21.

The FMLA prohibits an employer from interfering with an employee's right to return to the same or equivalent position upon his return from FMLA leave. 29 U.S.C. § 2614(a)(1) ("On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. An employee is entitled to such reinstatement even if the employee has been replaced or his position has been restructured to accommodate the employee's absence."). In lieu of reinstatement, a plaintiff may be awarded front pay. See McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1145 (10th Cir. 2006) ("Front pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement to make plaintiff whole." (internal quotation marks omitted)). Defendant asserts that plaintiff could not have been reinstated and that there was no possibility to transfer him to another position, relieving defendant of any responsibility to pay plaintiff additional damages. Dkt. # 160, at 11-12. Plaintiff asserts that he should have been reinstated or given the opportunity to transfer and asserts that he is entitled to front pay in lieu of such reinstatement or transfer. Dkt. # 172, at 22.

Although defendant asserts that plaintiff's position was eliminated and has not since been replaced, as discussed above, factual issues exist regarding defendant's decision to terminate plaintiff's employment and eliminate his position. And factual disputes exist regarding whether plaintiff was entitled to a transfer to a different position. These disputes include whether other employees had previously transferred between defendant and other Dover entities, whether the company had a policy governing such transfers, and whether plaintiff had been rated as a high potential talent within the company. See Dkt. # 160, at 6-7; Dkt. # 172, at 6. Defendant asserts that it did not consider plaintiff for transfer to another executive position because there were no open

positions and it had no company policy or practice of transferring executive level employees, explaining that those individuals plaintiff asserts were transferred were highly rated individuals who were recruited to other positions.  Dkt. # 160, at 7.  Plaintiff responds that deposition testimony reveals that defendant did, in fact, transfer executives between defendant and other Dover-related entities, and disputes defendant's assertions regarding its reasons for denying plaintiff an opportunity to transfer.  Dkt. # 172, at 22.  Based on these disputed facts, the Court cannot conclude that plaintiff would not have been entitled to reinstatement or to transfer to another position upon the elimination of his position. See Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 317 (6th Cir. 2001) ("If [plaintiff] could show that [defendant] normally gives employees an opportunity to be considered for new jobs within the company when their positions are eliminated, or that another employee who had not invoked FMLA rights was considered for a transfer, then [plaintiff] could raise a reasonable inference that he was treated dissimilarly because he had invoked his rights under the FMLA.").  The Court thus cannot conclude that plaintiff cannot collect damages for any period beyond December 2012.

In sum, disputed factual issues exist regarding whether plaintiff would have been terminated and his position eliminated pursuant to restructuring, regardless of his FMLA leave, and whether plaintiff would have been entitled to transfer to another position within the company when his position was eliminated.  As such, the Court cannot find, as a matter of law, that defendant has paid plaintiff all the damages to which he is entitled.  Defendant's motion for summary judgment should thus be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment Regarding Plaintiff's Damages and Brief in Support (Dkt. # 160) is **denied**.

10

**DATED** this 23rd day of February, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE