## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAUL JANCZAK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0154-CVE-FHM** |
| | ) | |
| **TULSA WINCH, INC.** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

This case concerns an employee, Paul Janczak, who took FMLA leave after he was injured in a motorcycle accident and was terminated by his employer, Tulsa Winch, Inc., the day he returned from leave, purportedly because Tulsa Winch had decided to eliminate plaintiff's position pursuant to a corporate restructuring. Plaintiff filed suit against defendant alleging interference with and retaliation for exercising his FMLA rights. Defendant filed a motion for summary judgment on plaintiff's interference and retaliation claims, which this Court granted. The Tenth Circuit reversed the grant of summary judgment on the interference claim and remanded the case. This Court subsequently granted defendant leave to file a second motion for summary judgment, related to the issue of damages only, but the motion was denied. There are currently three pending motions: Defendant's <u>Daubert</u> Motion and Brief to Exclude the Testimony of Plaintiff's Proposed Expert Witness Kathy Bottroff (Dkt. # 175); Defendant's Motions in Limine (Dkt. # 176); and Plaintiff's Motions in Limine (Dkt. # 177).

**I.**

Defendant has filed a <u>Daubert</u> motion, objecting to the testimony of plaintiff's expert, Kathy Bottroff, a vocational rehabilitation counselor plaintiff intends to call to testify regarding plaintiff's attempts to mitigate his damages by seeking other employment. Dkt. # 175. Defendant argues that this expert's testimony should be excluded because it does not satisfy the reliability and relevance standard dictated by Fed. R. Evid. 702 and the <u>Daubert</u> line of cases, it would touch upon an ultimate question of law, and it would be unfairly prejudicial to defendant. <u>Id.</u> at 3. Plaintiff asserts that his proposed expert satisfies the dictates of <u>Daubert</u> and the testimony the expert intends to provide does not touch upon an ultimate question of law and is not unfairly prejudicial to defendant.[1] Dkt. #182, at 1-2.

In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1992), the Supreme Court held that district courts must initially assess the admissibility of expert testimony under Fed. R. Evid. 702. In <u>Bitler v. A.O. Smith Corp.</u>, 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts in considering a <u>Daubert</u> challenge. First, the Court should make a preliminary finding that the expert is qualified to testify. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based

---

[1] On February 29, 2016, plaintiff filed Plaintiff's Motion to Strike Certain Arguments in Defendant's Reply Brief in Support of Its <u>Daubert</u> Motion to Exclude Testimony of Plaintiff's Proposed Expert Witness Kathy Bottroff (Dkt. # 197). Plaintiff asserts that defendant's reply brief raises issues for the first time and asks the Court to strike those portions of the reply brief or stay a ruling on defendant's <u>Daubert</u> motion to allow plaintiff to respond to defendant's new arguments. <u>Id.</u> at 2. Because the Court concludes that Botroff's testimony is unnecessary to assist the trier of fact, plaintiff's argument about defendant's reply brief is immaterial. The Court does not rely on defendant's assertions in its reply brief in reaching its conclusion about the admissibility of plaintiff's expert's testimony. As such, allowing plaintiff to respond to defendant's allegedly new arguments or staying a ruling on defendant's <u>Daubert</u> motion is unnecessary.

on a reliable factual basis.  The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1223 (citing Daubert, 509 U.S. at 593-94).  Then Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions."  Id.  In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert.  Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 106, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Wester R. Co., 346 F.3d 987, 992 (10th Cir. 2003).  Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'"  Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).  The party offering the expert's testimony has the burden to prove that the expert is qualified and that his opinions are reliable.  Dodge v. Cotter Corp., 328 F.3d 1212, 1222 (10th Cir. 2003); Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 (10th Cir. 2001); see also Fed. R. Evid. Advisory Committee Note to 2000 Amendments ("the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

Plaintiff describes Bottroff as a "vocational expert."  Dkt. # 182, at 1.  Bottroff received a Bachelor of Science in Special Education from Oklahoma State University and a Master of Science in Psychology from Oklahoma State University.  Dkt. # 175-1, at 13.  From 1978 to1980, Bottroff

was a high school teacher teaching students with emotional and developmental disabilities.  Id. From 1981to1984, Bottroff served as a vocational coordinator, working with industrially injured workers.  Id.  From 1984 to1995, Bottroff served as a rehabilitation specialist, where she served as a vocational expert in litigation and provided counseling for industrially injured workers and veterans.  Id. at 12.  Since 1995, Bottroff has owned her own professional rehabilitation and occupational services company, through which she provides vocational testimony in litigation and provides career counseling to people with disabilities.  Id.  Bottroff has also served as an adjunct instructor and clinical supervisor at Langston University, teaching courses in career development and job placement and supervising internships.  Id.

Defendant's argument concerning the admissibility of Bottroff's testimony has three components: (1) reliability and relevance; (2) testimony regarding an ultimate issue of law; and (3) unfair prejudice to defendant.  First, defendant argues that Bottroff's testimony does not satisfy the Rule 702 standards for reliability and relevance because she does not have the specialized knowledge to testify as to a high-level executive job search when she has no experience helping such individuals seek employment.  Dkt. # 175, at 4.  Under Fed. R. Evid. 702,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or education, may testify thereto in
> the for of an opinion or otherwise, if (1) the testimony is based upon sufficient facts
> or data, (2) the testimony is the product of reliable principles and methods, and (3)
> the witness has applied the principles and methods reliably to the case.

The Court need not reach the issue of the reliability or relevance of Bottroff's testimony because it concludes that Bottroff's testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue."  See id.  Expert testimony is unnecessary as to the issue of whether plaintiff attempted to mitigate his damages.  Plaintiff himself may testify as to the steps he took to

4

attempt to find alternate employment and, based on this testimony, the jury may decide whether plaintiff sufficiently attempted to mitigate his damages.  A fact witness, not an expert witness, is necessary to testify as to how plaintiff attempted to mitigate his damages.

And, even if Bottroff's expert testimony were necessary, any testimony concluding that plaintiff mitigated his damages by undergoing a thorough job search should be excluded as a conclusion regarding an ultimate issue.  Fed R. Evid. 704 provides that opinion testimony is not impermissible solely because it embraces an ultimate issue.  But, testimony on ultimate issues may be inadmissible.  See  Anderson v. Suiters, 499 F.3d 1228, 1237 (10th Cir. 2007) (explaining that testimony on an ultimate issue of law is disfavored); Specht v. Jensen, 853 F.2d 805 (10th Cir. 1988) (finding that admission of expert testimony  regarding ultimate issues of law was reversible error). Plaintiff's expert is expected to testify that plaintiff has attempted to mitigate his damages through an aggressive and thorough job search.  This evidence speaks to an ultimate issue that directly affects the damages to which plaintiff would be entitled.  Bottroff's testimony should be excluded on this basis.  If plaintiff wishes to present evidence of the steps he took to mitigate his damages, he need only testify to these steps himself.  Plaintiff may present the facts to the jury regarding his efforts to mitigate his damages by seeking alternate employment and leave to the jury the question of whether his actions were sufficient mitigation.

Defendant also argues that the admission of Bottroff's testimony would result in unfair prejudice to defendant because it would suggest to a jury that plaintiff suffers from a disability. Dkt. # 175, at 5.  The Court finds this argument unpersuasive because defendant could easily rebut any alleged suggestion that plaintiff suffered from a disability merely by asking whether plaintiff suffered from a disability.  This issue, however, is not determinative because the Court concludes,

for the above mentioned reasons, that Bottroff's expert testimony should be excluded because it does not assist the trier of fact in determining a fact in issue.[2]

## II.

Defendant raises twelve issues in his motions in limine (Dkt. # 176).  Plaintiff agrees with only one of defendant's issues: exclusion of any evidence relating to the emotional or financial effect of plaintiff's termination on plaintiff.  Such evidence is excluded by agreement.  The remaining eleven issues are contested.

Damages After December 31, 2012

Defendant seeks to exclude any evidence relating to any damages plaintiff may have suffered after December 31, 2012, the date which defendant asserts plaintiff's position would have been eliminated pursuant to restructuring, regardless of his FMLA leave.  Dkt. # 176, at 9-10.  Defendant asserts that because plaintiff lacks any evidence demonstrating he would be entitled to a transfer after the elimination of his position, his damages are "wildly speculative," are irrelevant to the issues for trial, and would be unfairly prejudicial.  Id. at 10.  Plaintiff responds that it is a disputed factual issue whether defendant terminated plaintiff pursuant to a restructuring that was solely motivated by business concerns.  Dkt. # 181, at 3.

Under Fed. R. Evid. 401, relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  However, relevant evidence can be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

---

[2]      In the agreed pretrial order, defendant identifies its own expert witness that it states will testify as to plaintiff's failure to undertake a reasonable effort to mitigate his damages.  For the same reasons, defendant's expert testimony should be excluded.

the issues, or misleading the jury . . . ." Fed. R. Evid. 403.  When considering a Rule 403 challenge, the court should "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Mendelsohn v. Sprint/United Management Co., 466 F.3d 1223, 1231 (10th Cir. 2006).  Exclusion of evidence under Rule 403 is an extraordinary remedy that should be used sparingly.  World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006).

This Court previously entered an opinion and order (Dkt. # 196) denying defendant's motion for summary judgment on the basis that it had paid plaintiff all the damages to which he was entitled, finding that genuine issues of material fact existed regarding the damages that plaintiff could recover, precluding summary judgment.  For the same reasons the Court concluded that summary judgment was inappropriate, the Court also concludes that this evidence is relevant to a central issue in the case -- what damages plaintiff could recover if the jury concludes that defendant interfered with the exercise of plaintiff's FMLA rights.  These factual issues render evidence of damages after December 31, 2012 potentially relevant.  And the introduction of this evidence is not unfairly prejudicial to defendant because it carries significant probative value regarding the damages to which plaintiff may be entitled and presents minimal risk of prejudice.  Defendant is entitled to rebut plaintiff's argument to the jury by presenting its case that it has already paid plaintiff any damages to which he is entitled.  Evidence of damages after December 31, 2012 is thus admissible.

Severance or Terms of Offered Severance Agreement

Defendant seeks to exclude any evidence relating to the offer of severance or the terms of the offered severance agreement that it gave plaintiff when it terminated plaintiff's employment during an October 1, 2012 meeting.  Dkt. # 176, at 10-11.  Defendant asserts that, pursuant to Fed.

7

R. Evid. 408, any mention of the severance offer should be excluded as a compromise or an offer to compromise.  Id. at 11.  Plaintiff responds that it does not seek to introduce the severance agreement for an impermissible purpose under Rule 408, instead arguing that it intends to introduce the agreement as evidence of defendant's motivation in terminating plaintiff's employment and eliminating his position.  Dkt. # 181, at 6.

Under Fed. R. Evid. 408, evidence of an offer of compromise is inadmissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]"  But Rule 408 allows this evidence when it is introduced for another purpose. Rule 408 does not preclude the use of plaintiff's severance agreement because plaintiff intends to use the agreement, which does not mention the corporate restructuring as the reason for termination, to demonstrate that defendant's stated motive of terminating plaintiff pursuant to a corporate restructuring was not defendant's true motivation in taking this action.  This evidence is relevant to a fact of consequence in the case -- why defendant terminated plaintiff's employment-- and it is not precluded by Rule 408.   This evidence is thus admissible.

<u>Severance Agreement and Terms of Severance Offered to Garry Jung</u>

Defendant similarly seeks to exclude any evidence relating to the severance agreement that it offered to Garry Jung, defendant's long-time controller, when it terminated his position.  Dkt. # 176, at 12.  Defendant asserts that, like plaintiff's severance agreement, the Court should exclude any mention of this agreement as a compromise or an offer to compromise under Rule 408.  Id. at 12-13.  Plaintiff responds that, as with plaintiff's severance agreement, he does not intend to introduce the agreement for an impermissible purpose, rather he intends to use it as evidence of defendant's motivation in terminating plaintiff's employment and eliminating his position, asserting

8

that Jung's severance agreement shows that defendant treated Jung more favorably than plaintiff. Dkt. # 181, at 7-8.  For the same reasons that the Court concludes that evidence of plaintiff's severance agreement is admissible, the Court also concludes that evidence of the severance agreement offered to Garry Jung is admissible.  Plaintiff does not seek to utilize this evidence in an impermissible manner under Rule 408, and as such, this evidence is admissible.

Canadian Operation's Success under Plaintiff's  Leadership

Defendant seeks to exclude any evidence regarding the success of the Canadian operation under plaintiff's leadership, arguing that it is irrelevant to plaintiff's FMLA interference claim and asserting that allowing such evidence would result in unfair prejudice by permitting the jury to infer that the elimination of plaintiff's position was either illogical or a bad business decision. Dkt. # 176, at 15.  Plaintiff responds that this evidence is relevant to whether defendant interfered with plaintiff's exercise of his FMLA rights because it may be used to show the importance of the GM position to the Canadian operation and to show that defendant was aware of plaintiff's contributions as GM.  Dkt. # 181, at 9.  Plaintiff asserts that this evidence may be used to prove that defendant's true reason for terminating plaintiff was the exercise of his FMLA leave, rather than its proffered reason of a corporate restructuring.  Id.

Evidence of the Canadian operation's success under plaintiff's leadership is relevant to the issue of why defendant terminated plaintiff and eliminated his position because it helps to prove or disprove a fact of consequence in this case -- whether defendant eliminated plaintiff's position pursuant to a corporate restructuring, regardless of plaintiff's FMLA leave.  And the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice, particularly when

defendant may counter this risk by introducing evidence to establish that it would have eliminated plaintiff's position regardless of his success in the Canadian operation. This evidence is admissible.

Whether Plaintiff Should have Been Considered for Transfer

Defendant seeks to exclude the introduction of any evidence regarding whether plaintiff should have been considered for transfer to another position after the elimination of his position, arguing that there is no evidence that plaintiff was entitled to a transfer rendering any argument to the contrary irrelevant. Dkt. # 176, at 17. Defendant also asserts that allowing plaintiff to argue otherwise would result in unfair prejudice because it would force defendant to explain to the jury why it did not afford plaintiff a benefit to which he was not entitled. Id. Plaintiff responds that this evidence is relevant to whether defendant should have placed plaintiff in a substantially equivalent position upon elimination of plaintiff's position. Dkt. # 181, at 12.

In this Court's opinion and order regarding defendant's motion for summary judgment on damages (Dkt. # 196), the Court concluded that genuine issues of material fact existed regarding whether plaintiff should have been considered for a transfer to another position and that such a factual dispute precluded summary judgment. In the opinion and order, the Court explained that whether defendant failed to transfer plaintiff to a different position to which he was entitled is a question of fact directly bearing upon defendant's alleged interference with plaintiff's FMLA leave. See id. at 9. This evidence is relevant because it directly relates to whether defendant failed to place plaintiff in a substantially equivalent position when it eliminated plaintiff's position and terminated his employment, thereby interfering with plaintiff's FMLA rights. The introduction of this evidence would not result in unfair prejudice to defendant because the probative value of the evidence is not substantially outweighed by the prejudicial effect and allowing such evidence does not preclude

defendant from presenting evidence and arguing to the jury that plaintiff was not entitled to a transfer.  As such, this evidence is admissible.

Transfer of Other Tulsa Winch Employees to Other Dover Entities

Defendant similarly seeks to exclude the introduction of any evidence regarding transfer of other employees from defendant to other Dover-related entities, arguing that it is irrelevant and would be unfairly prejudicial to admit this evidence when the employees who transferred between entities were not similarly situated to plaintiff in any respect.  Dkt. # 176, at 17.  Plaintiff responds that this evidence is directly relevant to the issue of whether plaintiff was entitled to transfer to another position and its admission would not be unfairly prejudicial to defendant because its probative value is not substantially outweighed by its prejudicial effect.  Dkt. # 181, at 12.

As discussed in relation to defendant's argument that all evidence of plaintiff's eligibility for a transfer should be excluded, whether plaintiff was entitled to a transfer is a question of fact that is directly related to whether defendant interfered with plaintiff's FMLA rights.  Evidence regarding other employees who transferred between defendant and other Dover-related entities is relevant to the issue of whether plaintiff should have been offered an opportunity to transfer and whether defendant's failure to transfer plaintiff constituted interference.  And introduction of this evidence would not result in unfair prejudice to defendant because the risk of prejudice does not substantially outweigh the probative value. Defendant is entitled to rebut this evidence by presenting evidence and arguing to the jury that employees who received transfers were not similarly situated to plaintiff in any way.  As such,  evidence of other employees who transferred to Dover-related entities is admissible.

11

Delay in Payment of Post-Termination Compensation

Defendant argues that any mention of the delay in payment of post-termination compensation to plaintiff by defendant should be excluded because it is irrelevant and its introduction would result in unfair prejudice to defendant.  Dkt.# 176, at 19.  Defendant terminated plaintiff on October 1, 2012.  Id.  Pursuant to the offer letter plaintiff signed when he began employment with defendant, he was entitled to three months salary upon termination without notice.  Id.  Defendant asserts that the delay in payment is irrelevant to the issue of whether the elimination of plaintiff's position was related to his FMLA leave and argues that if the evidence were allowed, the necessary rebuttal evidence would risk confusing  the jury on the issues in the case.  Id.  Plaintiff responds that evidence of the delay in post-termination compensation is relevant because its is evidence of defendant's continued hostility toward plaintiff's exercise of his FMLA rights.  Dkt. # 181, at 13.

Plaintiff's remaining claim at this stage of the litigation is that defendant interfered with his exercise of his FMLA rights by terminating his employment and eliminating his position the day he returned from leave.  Plaintiff does not make any allegations related to his interference claim that involve the delay in payment of post-termination compensation.  And, even if a jury concludes that defendant interfered with plaintiff's FMLA leave, and concludes that plaintiff is entitled to damages, the parties agree that plaintiff ultimately received three months salary in post-termination compensation.  When plaintiff received such a payment is irrelevant to the issue of damages.  Evidence of defendant's delay in payment of post-compensation to plaintiff is irrelevant and therefore inadmissible.

<u>Whether Plaintiff was Required to Work during Leave</u>

Defendant argues that plaintiff should be precluded from arguing or introducing any evidence suggesting that plaintiff was required to work during his FMLA leave, arguing that such evidence is irrelevant and would be unfairly prejudicial.  Dkt. # 176, at 20.  Defendant asserts that any evidence of plaintiff working during his FMLA leave is irrelevant because plaintiff does not allege that defendant interfered with his FMLA rights by requiring plaintiff to perform work while on FMLA leave.  <u>Id.</u>  Defendant further asserts that the probative value of such evidence is substantially outweighed by the risk of unfair prejudice because it could allow the jury to impermissibly infer that defendant was interfering with plaintiff's FMLA leave.  <u>Id.</u>  Plaintiff responds that this evidence is relevant, particularly because defendant asserts that it did not communicate the decision to terminate plaintiff and eliminate his position while plaintiff was on leave because it did not want to bother plaintiff while he was on leave.  Dkt. # 181, at 13.  Plaintiff asserts that evidence that plaintiff was required to work during leave helps rebut this argument and helps prove that defendant terminated plaintiff because of his FMLA leave.  <u>Id.</u>

This evidence is irrelevant to a fact of consequence in the case because the reason that defendant did not communicate to plaintiff during his leave that it had decided to eliminate his position and terminate his employment has no bearing on why defendant decided to take this action.  And plaintiff's interference claim makes no allegations that defendant interfered with plaintiff's FMLA rights by requiring him to work while he was on leave.  Because the reason defendant chose not to contact plaintiff during leave regarding the termination decision is irrelevant, it is similarly irrelevant whether defendant otherwise contacted plaintiff or asked plaintiff to perform any work

during his leave.  Evidence of whether plaintiff was required to work during his FMLA leave should thus be excluded.

Request for Medical Release at October 1, 2012 Meeting

Defendant seeks to exclude any evidence that defendant's human resources director, Cheryl Bailey, requested that plaintiff bring his release and authorization to return to work when meeting with company executives on October 1, 2012.  Dkt. # 176, at 20.  Defendant asserts that this evidence is irrelevant to any issue in the case because defendant had decided to terminate plaintiff prior to the meeting.  Id. at 21.  Defendant also argues that the evidence would be unfairly prejudicial because it has little probative value and would cast defendant in a negative light for requiring plaintiff to present a release to return to work when defendant knew it would terminate plaintiff the day he returned.  Id.  Plaintiff responds that this evidence is relevant because it demonstrates that Bailey was not forthright when requesting plaintiff's medical release and her credibility is a central issue in the case.  Dkt. # 181, at 14.

Plaintiff's medical release authorizing his return to work is irrelevant to any issue in the case. Defendant requested that plaintiff bring his medical release to the October 1, 2012 meeting, pursuant to company policy, after defendant had decided to terminate plaintiff and eliminate his position. This evidence thus has no probative value because it has no bearing on the decision defendant made in August 2012 to terminate plaintiff upon his return from leave.  As such, this evidence is inadmissible.

Inquiry at October 1, 2012 Meeting about Plaintiff's Medical Certification

Defendant similarly seeks to exclude any evidence related to Cheryl Bailey's inquiry about plaintiff's medical certification in an October 1, 2012 email, arguing that it is irrelevant and unfairly

prejudicial.  Dkt. # 176, at 22.  Plaintiff responds that this evidence is relevant because Bailey's credibility is a central issue in the case and evidence of Bailey's inquiry about plaintiff's medical certification helps prove that she is not a credible witness.  Dkt. # 181, at 15.

For the same reasons that the Court concludes that evidence of defendant's request that plaintiff bring a medical release to the meeting on October 1, 2012 is inadmissible, it similarly concludes that the inquiries about plaintiff's medical certification is likewise inadmissible.  This evidence has no probative value to any issue in the case and should thus be excluded.

Plaintiff's Injuries

Defendant argues that any evidence relating to the severity of plaintiff's injuries, including any photographs or graphic testimony, should be excluded because it is irrelevant to plaintiff's claim and allowing its inclusion would result in unfair prejudice.  Dkt. # 176, at 23.  Defendant argues that a jury may be tempted to resolve an issue in favor of plaintiff out of sympathy after learning of the severity of the injuries he suffered in his motorcycle accident, and because the nature of plaintiff's injuries have no bearing on his FMLA claim, the potential for prejudice would substantially outweigh any probative value of this evidence.  Id.  Plaintiff responds that plaintiff's injuries are relevant insofar as they were communicated to plaintiffs supervisor, Steve Oden.  Dkt. # 181, at 16. Plaintiff asserts that his wife emailed Oden shortly after the accident and included a picture of plaintiff's injuries.  Id.  Plaintiff asserts that this image is relevant because it demonstrates that Oden, the decision maker regarding plaintiff's termination, was aware of the serious nature of plaintiff's injuries. Id.

The parties do not dispute that plaintiff sustained serious injuries in a motorcycle accident and that these injuries entitled him to FMLA leave.  Evidence of the severity of plaintiff's injuries

is irrelevant to whether defendant interfered with plaintiff's FMLA rights by terminating plaintiff's employment and eliminating plaintiff's position upon plaintiff's return from FMLA leave.  Any evidence of the severity of plaintiff's injuries is thus inadmissible.

## III.

Plaintiff raises ten issues in his motions in limine (Dkt. # 177), seeking exclusion of evidence based largely on relevance and unfair prejudice.  Two of the issues are wholly uncontested by defendant: exclusion of (1) any evidence related to plaintiff's application for Canadian work permits and (2) the Tenth Circuit decision in this case reversing this Court's grant of summary judgment on plaintiff's interference claim.  Such evidence is excluded by agreement.  Defendant states that exclusion of two additional issues is uncontested, provided that plaintiff complies with certain conditions: (1) any evidence relating to plaintiff's working relationship with his fired former supervisor, Andrew Masullo, and (2) any evidence relating to any severance agreement between plaintiff and another company.[3]  Assuming plaintiff complies with such conditions, such evidence is excluded.  Six remaining issues are contested.

Janczak's Family Business and Distributions Received

Plaintiff seeks the exclusion of any evidence relating to plaintiff's family business and any distributions he received, arguing that the evidence is irrelevant and its introduction would be unfairly prejudicial to plaintiff.  Dkt. # 177, at 2.  Plaintiff receives a monthly distribution of

---

[3]     Defendant does not contest introduction of evidence of plaintiff's work history with his prior supervisor, provided that plaintiff does not intend to introduce evidence of positive performance reviews from this period.  Dkt. # 184, at 8.  Defendant does not contest introduction of evidence of any severance agreement between plaintiff and another company, provided that plaintiff does not introduce evidence of the severance agreement defendant offered plaintiff.  Id. at 9.

approximately $10,000 in exchange for his assistance in managing the family business, which is solely owned by plaintiff's mother.  Id.  Plaintiff argues that this evidence is irrelevant because a plaintiff's damages in an employment discrimination action are not offset by earnings from a secondary income, provided that the plaintiff could have earned the secondary income even if his primary employment remained the same.  Id. at 2-3.  Plaintiff asserts that introducing this evidence would be unfairly prejudicial because it would be used only to portray plaintiff as an unsympathetic plaintiff and imply that he was distracted by his obligations to his family business.  Id. at 3.  Defendant responds that, because offset is an issue for trial, plaintiff's $10,000 monthly distribution from his family business is relevant and necessary to defendant's offset defense.  Dkt. # 184, at 4.

In an employment discrimination action, such as an FMLA interference action, a defendant is entitled to offset damages owed to plaintiff by any amount that plaintiff has received from a secondary source.  See Whatley v. Skaggs Companies, Inc., 707 F.2d 1120, 1139 (10th Cir. 1983).  Evidence relating to income plaintiff received from other sources is thus relevant to defendant's offset defense.  Although plaintiff argues that distributions from his family business cannot be used to offset his damages because he could have earned the secondary income even if his primary employment remained the same, this question of fact remains for the jury to conclude whether plaintiff could have earned his secondary income while fulfilling his duties related to his primary income.  And allowing such evidence to be presented to the jury would not be unfairly prejudicial because whether plaintiff received income from an alternate source has significant probative value regarding defendant's offset defense and little risk exists that the jury would infer from this evidence that plaintiff is an unsympathetic figure and a distracted employee.  This evidence's probative value

is not substantially outweighed by the danger of unfair prejudice.  As such, this evidence is admissible.

<u>Janczak's Involvement with or Ownership of Other Businesses</u>

Plaintiff seeks the exclusion of any evidence relating to plaintiff's involvement in, or ownership of, other businesses while employed by defendant, arguing that the evidence is both irrelevant and unfairly prejudicial. Dkt. # 177, at 4.  Plaintiff explains that he established an entity, Janczak Land Development, LLC, to receive monthly distributions from his family business and to avoid personal liability.  <u>Id.</u>  He asserts that any mention of this entity is irrelevant to the his FMLA claim and argues that allowing introduction of the evidence would be unfairly prejudicial because it could allow the jury to infer that plaintiff created the business entity for an improper purpose.  <u>Id.</u> He also asserts that its introduction would waste the Court and jury's time by requiring plaintiff to give a lengthy explanation regarding his motives in creating this business entity.  <u>Id.</u> at 4-5. Defendant responds that, like plaintiff's monthly distribution from his family business, this evidence is relevant because it is related to defendant's offset defense. Dkt. # 184, at 4.  For the same reasons that the Court concludes that distributions plaintiff received from his family's business is relevant, it also concludes that plaintiff's involvement with or ownership of other businesses is relevant.

<u>Janczak's Presence in Wisconsin at Time of Accident</u>

Plaintiff argues that any evidence relating to his presence in Wisconsin at the time of his motorcycle accident is inadmissible because it is both irrelevant and unfairly prejudicial. Dkt. # 177, at 5.  Plaintiff was injured in a motorcycle accident near his home in Wisconsin.  <u>Id.</u>  The day of plaintiff's accident, he was to report to work at his Vancouver office, but notified colleagues that he would not be coming in that day because he was not feeling well.  <u>Id.</u>  Plaintiff explains that later

18

in the day he began to feel better and went for a motorcycle ride that resulted in his accident and injuries.  Id.  Plaintiff asserts that whether he was scheduled to travel to work on the day of his accident is irrelevant to any claim or defense in this case, arguing that it is undisputed that he suffered serious injuries in an accident on July 30, 2012 that entitled him to take FMLA leave.  Id. at 6.  Plaintiff asserts that the introduction of the evidence would also cause unfair prejudice because it would allow the jury to infer that plaintiff was a dishonest employee or was somehow in violation of company policy when he sustained his injuries.  Id.  Plaintiff also argues that allowing such evidence would result in confusion of the issues and a waste of time because it would "require a series of mini-trials on collateral events with no real probative value . . . ."  Id.  Defendant responds that evidence of plaintiff's presence in Wisconsin on the day of his accident is relevant to the events of that day and plaintiff's FMLA leave, and any prejudice to plaintiff is outweighed by the probative value of the evidence.  Dkt. # 184, at 6.

Evidence of plaintiff's presence in Wisconsin on the day of his accident is irrelevant to any issue at trial because the parties agree that plaintiff sustained injuries that entitled him to FMLA leave.  At trial, the issue for the jury is whether defendant interfered with plaintiff's exercise of FMLA rights by terminating his employment upon return from leave.  This issue raises no question regarding how plaintiff sustained his injuries or whether he was entitled to FMLA leave.  This evidence is irrelevant and shall be excluded.

Janczak's Departure from Former Employer

Plaintiff seeks to exclude any evidence concerning his departure from his former employer, arguing that the evidence is inadmissible because it is both irrelevant and unfairly prejudicial.  Dkt. # 177, at 8.  In 2004, plaintiff was released from his job with Brevini International Holding due to

19

poor economic conditions. Id. Plaintiff received a severance payment of $90,000. Plaintiff argues that his previous termination is irrelevant to his termination from defendant because defendant asserts the termination had nothing to do with plaintiff personally and was motivated solely by business concerns. Id. Plaintiff also argues that, even if the evidence has minimal probative value, it is unfairly prejudicial and could mislead the jury because it would allow the jury to infer that, because plaintiff was dismissed from a previous employer, "there must be an unstated personal reason for his dismissal by the Defendant." Id. at 9. Defendant responds that evidence of plaintiff's departure from his former employer is relevant because it is related to defendant's offset defense regarding distributions plaintiff received from his family's business. Dkt. # 184, at 7. Defendant argues that plaintiff began receiving distributions from the family business the same year he was terminated from his prior employer, thus making plaintiff's departure from his prior employer relevant to defendant's offset defense in this matter. Id. Defendant's argument that plaintiff's termination from his former employer is related to the distributions he received from his family business and is thus relevant to defendant's offset defense is tenuous at best. Defendant also responds that evidence of plaintiff's departure from his prior employer is relevant if plaintiff intends to testify about his prior experience and leadership while employed with this company. Id. Plaintiff responds that he has no intention of testifying about his work experience with his prior employer. Dkt. # 187, at 5. The evidence of plaintiff's departure from his former employer is irrelevant to a fact of consequence in the case, and as such it is inadmissible.

<u>Janczak's Health Care Provider Visits</u>

Plaintiff seeks to exclude any evidence of plaintiff's health care provider visits after August 31, 2012, arguing that this evidence is inadmissible because it is irrelevant and could confuse the

issues and mislead the jury. Dkt. # 177, at 11-12.  Plaintiff asserts that, because the parties agree that the decision to terminate plaintiff was made by the end of August 2012, any medical information relating to plaintiff's injuries beyond this date is irrelevant.  Id. at 12.  Plaintiff also argues that the introduction of this evidence would confuse the issues and mislead the jury because it could call into question what medical evidence defendant had when it decided to terminate plaintiff.  Id.  Defendant argues that this evidence is relevant and admissible because it believes plaintiff will assert that defendant decided to terminate plaintiff when, midway through plaintiff's leave, it received additional information about plaintiff's condition. Dkt. # 184, at 8-9.  Defendant asserts that evidence about plaintiff's condition even after the date it decided to terminate plaintiff and eliminate his position is necessary to rebut plaintiff's argument.  Id. at 9.

The parties agree that plaintiff sustained serious injuries in a motorcycle accident on July 30, 2012 and that these injuries entitled him to FMLA leave.  The parties also agree that defendant, at the latest, decided to terminate plaintiff's position on by August 31, 2012.  The status of plaintiff's condition is not at issue, particularly when the parties do not dispute that plaintiff was entitled to FMLA leave to recover from his injuries.  And, to the extent that defendant believes plaintiff will argue that new information about plaintiff's condition caused defendant to decide to terminate him, this information has no bearing on medical visits that plaintiff made subsequent to the date when defendant made the decision to terminate plaintiff.  This evidence is irrelevant and is thus inadmissible.

Other TWI Employees Granted FMLA or Returned from FMLA Leave

Plaintiff seeks to exclude all evidence regarding other employees of defendant who were granted FMLA leave or returned to their positions following their FMLA leave, arguing that it is

irrelevant, will confuse the issues and mislead the jury, and result in a waste of time.  Dkt. # 177, at 15.  Plaintiff asserts that, because motivation is not an element of an interference claim under the FMLA, how defendant treated other employees is irrelevant to the issue of whether it interfered with plaintiff's FMLA rights.  Id.  Plaintiff also asserts that admission of the evidence will result in confusion of the issues and mislead the jury because there is no evidence that these other individuals who took FMLA leave are in any manner similarly situated to plaintiff.  Id.  Defendant responds that this evidence is relevant and admissible to show that defendant has a routine practice and procedure associated with employees exercising FMLA rights and subsequently returning to work in the same position, asserting that Fed. R. Evid. 406 allows its admission.  Dkt. # 184, at 10.

Under Fed. R. Evid. 406, "[e]vidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the . . . routine practice."  Other employee's exercise of FMLA rights and defendant's response thereto do not constitute evidence of "an organization's routine practice," particularly when considering that an employee's exercise of FMLA rights may vastly differ from another employee's exercise of the same rights and acknowledging that such leave is considered by the employer on a case-by-case basis.  This evidence differs from the sort of evidence that courts consider evidence of a routine practice.  See, e.g., Hancock v. American Tel. & Tel. Co., Inc., 701 F.3d 1248, 1261-62 (10th Cir. 2012) (finding that evidence that telephone company provided all users with terms of service was relevant to prove that company acted in conformity with this practice on a certain occasion); Morris v. Travelers Indem. Co. of Am., 518 F.3d 755, 761 (2008) (explaining that evidence that an insurance agent had the usual practice of explaining various coverage options to customers was relevant to show he acted in conformity with this practice on a certain occasion).

Although the Court declines to find that Rule 406 permits the admission of evidence of other employees who took FMLA leave and returned to their positions upon completion of leave, the Court finds that the evidence is relevant to the issue of whether defendant interfered with plaintiff's FMLA rights.  And the Court finds that introduction of this evidence would not confuse the issues or mislead the jury and result in a waste of time.  The evidence has probative value regarding defendant's past  actions dealing with employees taking FMLA leave and this value is not substantially outweighed by the risk that the jury would be misled or confused.  Plaintiff is entitled to argue to the jury that the employees who took FMLA leave and returned to their positions were not similarly situated to plaintiff, thereby rebutting any evidence it contends would confuse or mislead the jury.  There is also no evidence that allowing such evidence would result in a waste of time that would outweigh this evidence's probative value.  The evidence of other employees taking FMLA leave and being restored to their positions upon return is thus admissible.

**IT IS THEREFORE ORDERED** that Defendant's <u>Daubert</u> Motion and Brief to Exclude the Testimony of Plaintiff's Proposed Expert Witness Kathy Bottroff (Dkt. # 175) is **granted**; Defendant's Motions in Limine (Dkt. # 176) is **granted in part and denied in part**; and Plaintiff's Motions in Limine (Dkt. # 177) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Certain Arguments in Defendant's Reply Brief in Support of Its <u>Daubert</u> Motion to Exclude Testimony of Plaintiff's Proposed Expert Witness Kathy Bottroff (Dkt. # 197) is **denied**.

**DATED** this 1st day of March, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

23